UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARRY FORTUNE                                    CIVIL ACTION

VERSUS                                           NUMBER: 10-4510

BURL CAIN, WARDEN                                SECTION: "C"(5)

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus of petitioner, Larry Fortune, along with the State's response and Fortune's traverse. (Rec. docs. 3, 11, 12). Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that Fortune's petition be dismissed with prejudice.

## PROCEDURAL HISTORY

Petitioner Fortune is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Fortune was charged via bill of information with committing aggravated incest upon his stepdaughter, age 15, during

the period between July 1, 2003 and November 20, 2003.[1] Fortune's first trial, a trial by jury in Orleans Parish Criminal District Court, ended in a mistrial on March 31, 2005, due to a hung jury. Thereafter, on June 28, 2005, Fortune elected to be tried by a judge and was found guilty as charged. On July 6, 2005, the State filed a multiple bill against Fortune. On June 23, 2006, Fortune was sentenced to 20 years incarceration at hard labor. On September 29, 2006, following a hearing in connection with the State's multiple bill, Fortune was adjudicated to be a fourth felony offender. On October 10, 2006, Fortune was resentenced as a multiple offender to life imprisonment without benefit of parole, probation, or suspension of sentence.[2] On May 23, 2007, the Louisiana Fourth Circuit Court of Appeal affirmed Fortune's conviction and sentence. State v. Fortune, 955 So.2d 763 (Table), 2006-KA-1273 (La. App. 4 Cir. May 23, 2007) (unpublished opinion).[3] On January 11, 2008, the Louisiana Supreme Court denied his writ application. State v. Fortune, 972 So.2d 1162 (La. 2008).

Following the conclusion of his direct appeal proceedings, Fortune purportedly filed an application for post-conviction relief with the state district court, raising the following claims: 1)

_____

[1]A copy of the bill of information is contained in the State rec., vol. 1 of 4.

[2]See docket master, State rec., vol. 1 of 4, pp. 2-3.

[3]A copy of the state appellate court's May 23, 2007 unpublished opinion is contained in the State rec., vol. 1 of 4.

ineffective assistance of counsel; 2) "warrantless entry"; 3) State's expert's testimony was insufficient; 4) ineffective assistance of counsel due to lack of funds to attain qualified expert testimony; 5) erroneous adjudication in habitual offender hearing; and, 6) chain of custody broken with respect to buccal swabs.[4]

On or about May 22, 2009, Fortune filed a post-conviction writ application with the Louisiana Fourth Circuit Court of Appeal, raising the following claims: 1) trial court erred in denying his claim based on "State v. Melinie";[5] 2) evidence was withheld in violation of Brady; 3) trial court erred in adjudicating Fortune a multiple offender; 4) ineffective assistance of counsel; 5) "warrantless entry"; 6) ineffective assistance of counsel due to lack of funds to attain qualified expert testimony; 7) erroneous

---

[4]A copy of Fortune's state district court post-conviction application, rec. doc. 3-1, is attached Fortune's federal habeas corpus petition.  However, there is no evidence in the State record that the application was actually filed with the state district court and there is no evidence that the state district court ruled on the matter.

[5]The state trial court's denial based upon State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996), was not in connection with Fortune's above-referenced post-conviction application which he claims he filed with the Orleans Parish Criminal District Court.  Instead, Orleans Parish Criminal District Court Judge Camille Buras issued Judgment on April 8, 2009, denying relief based on Melinie in connection with a pleading entitled "Supplemental Brief on Behalf of Larry Fortune", wherein Fortune sought relief in connection with his multiple bill adjudication. A copy of the pertinent Judgment is contained in the State rec., vol. 4 of 4.

adjudication in the habitual offender hearing; and, 8) chain of custody broken with respect to buccal swabs.[6]  On August 18, 2009, the Louisiana Fourth Circuit denied Fortune's writ application finding "no error in the judgment of the district court denying relator's application for post-conviction relief."  State v. Louisiana, No. 2009-K-0674 (La. App. 4 Cir. Aug. 18, 2009) (unpublished opinion).[7]

On or about September 18, 2009, Fortune filed a writ application with the Louisiana Supreme Court, raising the following claims: 1) the state trial court misapplied "State v. Melinie"; 2) evidence was withheld in violation of Brady; 3) trial court erred in adjudicating Fortune a multiple offender; 4) ineffective assistance of counsel; 5) "warrantless entry"; 6) ineffective assistance of counsel due to lack of funds to attain qualified expert testimony; 7) erroneous adjudication in the habitual offender adjudication; and, 8) chain of custody was broken with respect to buccal swabs.[8]  On August 18, 2010, the Louisiana

_____

[6]A copy of Fortune's post-conviction application filed with the Louisiana Fourth Circuit is contained in the State rec., vol. 4 of 4.

[7]A copy of the state appellate court's unpublished opinion is contained in the State rec., vol. 4 of 4.  While the opinion itself reflects that the writ was denied "this 18th day of July, 2009", the date stamp reflects a date of "Aug 18 2009".

[8]A copy of Fortune's post-conviction application filed with the Louisiana Supreme Court is contained in the State rec., vol. 4 of 4.

Supreme Court denied Fortune's writ application.  State ex rel. Fortune v. State, 42 So.2d 399 (La. 2010).

Fortune is now before this Court seeking federal habeas relief under §2254.  In the memorandum supporting his petition, Fortune raises the following claims: 1) ineffective assistance of counsel; 2) "warrantless entry"; 3) State's DNA expert's testimony was insufficient and admission of DNA was unlawful; 4) ineffective assistance of counsel due to lack of funds to attain qualified expert testimony; 5) erroneous adjudication in the habitual offender hearing; 6) chain of custody was broken with respect to buccal swabs; 7) evidence was withheld in connection with multiple offender adjudication in violation of Brady; and, 8) trial court erred in adjudicating Fortune to be a multiple offender.

The State submits that the instant action is timely (rec. doc. 11, p. 4), and that the claims have been properly exhausted as required under Rose v. Lundy, 455 U.S. 509 1982). (Rec. doc. 11, p. 6).[9]

Based upon the above recitation of the claims Fortune brought

---

[9]The State acknowledges that there is "no record of the filing of a post conviction relief application in the trial court" and no "record of a denial of the application". (Rec. doc. 11, p. 6).  Both timeliness and exhaustion are called into question if Fortune did not file his post-conviction application with the state district court.  However, the State relies on the Louisiana Fourth Circuit's opinion finding "no error in the State District Court's denial of Petitioner's application for post conviction relief" to support the conclusion that "Petitioner did file an application in the trial court" and "the trial court denied the application". (Rec. doc. 11, p. 6).

to each state court during his post-conviction proceedings, it is clear that, even assuming Fortune filed his post-conviction application to the state district court and the state district court ruled on same, he still did not bring every claim he raises in the instant petition to every state court, i.e., the district court, appellate court, and supreme court.  In <u>Baldwin v. Reese</u>, 541 U.S. 27, 31-32 (2004), the Supreme Court provided that for a petitioner to exhaust his state court remedies, he must properly present each of his federal habeas claims to each reviewing state court.  However, under the provisions of 28 U.S.C. §2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  Accordingly, this Court will proceed to address the merits of petitioner's claims following its examination of the facts and standard of review.

### FACTS[10]

On November 28, 2003, Detective Theolonius Dukes of the N.O.P.D. Child Abuse Unit received a complaint concerning possible child molestation on M.S.  The report came from the victim's mother.  Detective Dukes testified at trial that around 8:30 that morning he went to the address given to him for the defendant,

---

[10]The facts as stated hereinafter are as found by the Fourth Circuit Court of Appeal in the May 23, 2007 unpublished opinion wherein Fortune's conviction and sentence were affirmed.  <u>See</u>, State rec., vol. 1 of 4.  Fortune has not disputed the accuracy of the facts as set forth therein.

6

Larry Fortune, who was the victim's stepfather.  Detective Dukes
also had Fortune's cell telephone number, and while standing
outside the residence he called the number.  A man answered the
phone and identified himself as Fortune.  Detective Dukes
identified himself and asked Fortune to come to the door so that he
could speak with him.  Fortune agreed and hung up, but no one came
to the door.  Detective Dukes testified that after waiting for a
time, he went to the door and knocked.  The door was answered by a
man later identified as Larry Fortune's brother Ricky.  Detective
Dukes testified that Ricky allowed him to enter the residence and
admitted that Larry was present.  Detective Dukes eventually found
Larry hiding in a closet in a back bedroom.

Detective Dukes testified that he took Larry Fortune to the
Child Abuse office where he advised Fortune of his rights.  Fortune
indicated he understood his rights and agreed to give a statement.
The statement was audio and videotaped.  The State then introduced
the tape at trial, which the court had reviewed at least twice
before trial.  In this statement, Fortune admitted that he had had
sex with the victim at least seventy times.

Detective Dukes testified that he learned that the victim was
pregnant.  He took buccal swabs from Fortune and the victim, and he
later took one from her baby once it was born.  Det. Dukes
testified that he obtained the swab from Fortune while he was in
jail pursuant to a motion filed by the district attorney's office

and an order signed by a magistrate judge.  The detective admitted he obtained no formal search warrant to seize the swab from Fortune.  He also admitted that the buccal swabs were not analyzed for nearly a year after they were taken.  He further admitted that the boxes on the waiver of rights were not checked, but he reiterated that on the videotape before giving his statement, Fortune acknowledged and waived his rights.

M.S. testified at trial that in November 2003, she was fifteen years old.  She identified the defendant as her stepfather.  She admitted having consensual sex with him more than thirty times while she, her mother, and Fortune lived together.  She testified that she became pregnant and eventually had a son, J.S.  She admitted she initially made up a story in order to protect the defendant that she had become impregnated by another male.  On cross-examination, she testified that she knew a blood relative of the defendant named Pee Wee, but she insisted that Pee Wee was not the person she initially named as the father of her baby.

Jennifer Schroeder, qualified as an expert in molecular biology and DNA analysis, testified at trial that she is a DNA analyst for the N.O.P.D. Crime Lab.  She testified that she tested the buccal samples taken from the defendant, the victim, and her son.  She testified that based upon this comparison, the defendant was 30,430 times more likely to be J.S.'s father than an unrelated random male of the Caucasian, African-American, or Hispanic

8

populations.  She admitted that the samples were taken in 2004, and she did not test them until 2005, but all three samples were sealed when she retrieved them for testing.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in state court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference unless they were "... 'contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000), cert. denied, 532 U.S. 1039 (2001)(quoting 28 U.S.C. §2254(d)(1)).  The United States Supreme Court has also advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Hill, 210 F.3d at 485.  Questions of fact decided by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill, 210 F.3d at 485 (quoting 28 U.S.C. §2254(d)(2)).

**ANALYSIS**

**Claims 1) and 4):  Ineffective Assistance of Counsel**

The seminal Supreme Court decision regarding ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 697 (1984), wherein the Court held that in order to prove that counsel was ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the Strickland test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (citing Strickland, 466 U.S. at 690).  To prove prejudice under the Strickland standard, petitioner "must show that there is a

10

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Fortune argues that counsel was ineffective because he made no effective challenge to the State's expert DNA witness, Jennifer Schroeder, whose DNA testing showed a likelihood that Fortune was the father of the victim's baby. According to Fortune, counsel should have demanded copies of the DNA testing on which Schroeder's testimony was based for the purpose of challenging same. Fortune further claims that counsel was ineffective for failing to produce and have DNA testing performed on another family member with whom the victim allegedly had sexual intercourse. Additionally, Fortune claims that counsel was ineffective due to his failure to have the victim and the mother of the victim supply the dates on which the victim and Fortune had intercourse. Armed with such information, counsel then could have questioned Fortune as to whether he was living with the victim and her mother on these dates, thereby "shak[ing] the credibility of both key prosecution[] witnesses." (Rec. doc. 3, supporting memorandum, p. 5). Finally, Fortune lodges the general complaint that the Orleans Parish Indigent Defender Program is underfunded and, for this reason, the defense could not hire a DNA expert to refute the State's DNA expert's testimony.

Assuming that counsel was deficient in failing to obtain

copies of Schroeder's DNA testing, in failing to have DNA testing performed on samples taken from another family member, in failing to question prosecution witnesses regarding the dates on which the victim and Fortune had intercourse, and in failing to procure the necessary funds to procure a DNA expert, petitioner has failed to show that he was prejudiced by any of these alleged deficiencies.

Under LSA-R.S. 14:78.1, aggravated incest, the crime for which Fortune was convicted, was defined for the relevant time period, in pertinent part, as follows:

>       A.   Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
>
>       B.   The following are prohibited acts under this Section:
>
> (1)Sexual intercourse, sexual battery, aggravated sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state. ...
>
>       C.   Consent is a defense under this section to aggravated incest with or upon a stepson or stepdaughter unless the victim is less than eighteen years of age.

Fortune admitted that he had sexual intercourse with the victim, his fifteen-year old step-daughter, at least 70 times and the victim testified that she had sexual intercourse with Fortune more than 30 times.  The fact that Fortune fathered a child borne

12

by the victim is irrelevant for purposes of proving the necessary elements to convict Fortune of aggravated incest.  Thus, Fortune has failed to show a reasonable probability that but for counsel's alleged deficiencies, the result of his proceeding would have been different.  As such, the instant claim is without merit.

**Claim 2: Warrantless Entry**

Fortune asserts "that his Fourth Amendment [rights under] the United States Constitution [were] violated when the officers conducted a warrantless entry into his home."  (Rec. doc. 3, supporting memorandum, p. 14).  While Fortune admits that his brother gave the officer permission to enter the home, Fortune contends that his brother lacked authority to give such permission since he did not live in the house.  As such, the entry was illegal, thereby rendering his subsequent arrest illegal, along with the inculpatory statement he provided at the police station following his arrest.

Fortune further asserts that his Fourth Amendment rights were violated when a police officer, without first obtaining a warrant, took a swab sample from his cheek for the purpose of performing DNA tests.  As such, the DNA test results were improperly admitted at trial.

This Court need not address the merits of the above arguments due to the mandate enunciated in Stone v. Powell, 428 U.S. 465 (1976).  In Stone, the United States Supreme Court concluded:

> [W]here the State has provided an opportunity
> for full and fair litigation of a Fourth
> Amendment claim, the Constitution does not
> require that a state prisoner be granted
> federal habeas corpus relief on the ground
> that evidence obtained in an unconstitutional
> search or seizure was introduced at his trial.

<u>Id</u>. at 481-482 (footnote omitted).

In interpreting <u>Stone</u>, the Fifth Circuit has opined that an "opportunity for full and fair litigation" means just that: "an opportunity." <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320 (5th Cir. 2002), <u>cert</u>. <u>denied</u>, 537 U.S. 1196, 123 S.Ct. 1264, 154 L.Ed.2d 1034 (2003)(citing <u>Caver v. Alabama</u>, 577 F.2d 1188, 1192 (5th Cir. 1978)). Even if a defendant fails to take advantage of his opportunity to litigate his Fourth Amendment claim, the fact that the opportunity was there suffices for the <u>Stone</u> bar to apply. <u>Janecka</u>, 301 F.3d at 320. Furthermore, the Fifth Circuit has held that the <u>Stone</u> bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim. <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

In the present case, Fortune does not contend that he was deprived of the opportunity to litigate his Fourth Amendment claims fully and fairly in the state court system. In addressing this matter, the Louisiana Fourth Circuit noted that the alleged improper retrieval of a swab sample from Fortune's cheek was raised before the trial court via an oral motion and "the [trial] court took the matter under advisement to allow the defense time to file

14

a formal motion to suppress and memorandum on the motion, and to allow the State to respond." Fortune, No. 2006-KA-1273 at p. 4. However, Fortune failed to avail himself of this opportunity. "There is no indication in the record that the defense ever filed the requested motion and memorandum...." Id.

Thus, Fortune's Fourth Amendment claims are not properly before the Court because the requirements set forth in Stone have been met. Accordingly, the instant claims for habeas corpus relief are without merit.

### Claim 3): State's Expert Testimony Was Insufficient and Admission of DNA Evidence Was Unlawful

Fortune argues that the State's expert, Jennifer Schroeder, was not qualified to testify as an expert because "this was the very first case in which Ms. Schroeder had been qualified as an expert in the field of DNA analysis." (Rec. doc. 3, p. 22). However, a review of the trial transcript reflects that Fortune is incorrect. Ms. Schroeder testified to her qualifications and, while Fortune apparently does not believe her testimony, he cites the Court to no evidence proving otherwise.

Prior to Fortune's case, Ms. Schroeder, who graduated in molecular biology from Tulane University, had analyzed approximately 90 cases involving DNA evidence.[11]   Further, Ms. Schroeder had been accepted as an expert DNA witness in Sections K,

_____

[11]State rec., vol. 4 of 4, trial transcript, pp. 5 and 6.

H, and A of Orleans Parish Criminal District Court.[12]  Following a review of Ms. Schroder's credentials, the trial court qualified her as an expert "in the field of Molecular Biology and DNA analysis".[13] Based upon the above, this Court finds that the trial court did not err in this regard and Fortune suffered no violation of his constitutional rights.

In addition to questioning Ms. Schroeder's qualifications to offer DNA analysis, Fortune questions whether the trial court properly performed its "gate-keeping role per Daubert" with regard to its admission of DNA analysis which Fortune describes as "latter-day voo doo".  (Rec. doc. 3, pp. 22 and 24).  According to Fortune, if the trial court had "properly exercised its gate keeping function in balancing the probative value of [DNA] evidence against its prejudicial effect, [t]he trial court might have discovered the misgivings many experts and courts alike have with this type of testimony that utilizes the methodology as a basis for determining parenthood and sexual encounter."  (Rec. doc. 3, p. 23).

Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-90 (1993) and its progeny, scientific evidence must be "not only relevant, but reliable," that is, "derived by the scientific method" and "supported by appropriate validation."  The

---

[12]State rec., vol. 4 of 4, trial transcript, p. 5.

[13]State rec., vol. 4 of 4, trial transcript, p. 14.

trial court must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93.

In Schmidt v. Hubert, 2008 WL 4491467, *13 (W.D. La. Oct. 6, 2008) (Hill, MJ.) (adopted by Haik, J.), the Court examined a habeas petitioner's claimed Daubert violation, observing:

> Daubert did not set a constitutional standard for the admissibility of expert testimony; the case simply examined the standard for the admissibility of scientific evidence in federal trials conducted in federal courts under the Federal Rules of Evidence. Castillo [v. Johnson,] 141 F.3d [218,] 221 [(5th Cir. 1998)] (noting that Daubert did not address the admissibility of evidence in the context of federal constitutional law and hence, the petitioner's claim based on Daubert did not afford a basis for federal habeas corpus relief); Simpson v. Quarterman, 2007 WL 1008193, *22 (E.D. Tex.2007); Milone v. Camp, 22 F.3d 693, 702 (7th Cir. 1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 720, 130 L.Ed.2d 626 (1995); Norris v. Schotten, 146 F.3d 314, 335 (6th Cir. 1998); Keller v. Larkins, 251 F.3d 408, 419 (3rd Cir. 2001); Kinder v. Bowersox, 272 F.3d 532, 544-545 (8th Cir. 2001). See also United States v. Scheffer, 523 U.S. 303, 312 fn. 7, 118 S.Ct. 1261 (1998) (noting that "[n]othing in Daubert foreclosed, as a constitutional matter, per se exclusionary rules for certain types of expert or scientific evidence .... [and that i]t would be an odd inversion of our hierarchy of laws if altering or interpreting a rule of evidence worked a corresponding change in the meaning of the Constitution."). Thus, a claimed violation of Daubert does not equal a constitutional violation. Id.

Thus, the standard of habeas review "is not whether the testimony satisfied the Daubert test, which does not set forth a constitutional rule on the admissibility of scientific evidence, but rather whether the wrongful admission of evidence rendered the

trial fundamentally unfair."  Id. at *14 (citations omitted).
Further, "[a] trial is fundamentally unfair only if the evidence
played a 'crucial, critical, and highly significant role in the
trial....'" Id. (quoting Little v. Johnson, 162 F.3d 855, 862 (5th
Cir. 1998), cert. denied, 526 U.S. 1118, 119 S.Ct. 1768, 143
L.Ed.2d 798 (1999)).

In the instant matter, the DNA evidence did not play a
"crucial, critical, and highly significant role" in Fortune's
trial.  As this Court noted earlier:

> Fortune admitted that he had sexual intercourse with
> the victim, his fifteen-year old step-daughter, at least
> 70 times and the victim testified that she had sexual
> intercourse with Fortune more than 30 times.  The fact
> that [DNA evidence made it more probable than not] that
> Fortune fathered a child borne by the victim is
> irrelevant for purposes of proving the necessary elements
> to convict Fortune of aggravated incest.[14]

Accordingly, the instant claim for habeas corpus relief is
without merit.[15]

**Claims 5) and 8): Improperly Found To Be Multiple Offender**

Fortune argues "that the state court erred in adjudicating
[him] as a multiple offender because the State failed to establish
that [he] was convicted of a predicate offense or knowingly and

---

[14]See discussion supra at pp. 12-13.

[15]Contrary to Schmidt, supra, where petitioner raised a
Daubert challenge to the admission of DNA evidence prior to
trial, Fortune raised no such challenge.  In the absence of a
contemporaneous objection to the DNA evidence, this Court
questions whether Fortune preserved the instant claim for habeas
review.

voluntarily waived his <u>Boykin</u> rights." (Rec. doc. 3, supporting memorandum, p. 24). According to Fortune, there were two errors associated with his multiple offender adjudication. "First, the State failed to prove [his] identity as the same person convicted of the predicate offense at the multiple bill hearing." <u>Id.</u> Second, "the trial court erred in adjudicating him as a multiple offender because the State failed to prove that [he] knowingly and voluntarily waived his <u>Boykin</u> rights." (Rec. doc. 3, supporting memorandum, p. 27).

The above claims are without merit in light of the Supreme Court's holding in <u>Lackawanna County District Attorney v. Coss</u>, 532 U.S. 394, 396 (2001), wherein the Supreme Court determined that generally, "federal postconviction relief is [not] available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody." The Court reasoned that:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.... If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under §2254 on the ground that the prior conviction was unconstitutionally obtained.

Lackawanna, 532 U.S. at 403-404.[16]

**Claim 6): Broken Chain of Custody**

Fortune asserts that the State, in violation of Louisiana Code of Evidence Article 901, failed to show that the chain of custody, with regard to the buccal swabs, was not broken. As evidence supporting his claim, Fortune points to the allegedly conflicting testimony of Jennifer Schroeder and Detective Dukes regarding which swab was taken from which person. A review of the trial transcript reflects that Jennifer Schroeder testified, in pertinent part, as follows:

> A.   Item Two is one buccal swab kit confiscated from Jarrell Smith [the child].   Item Number Three is one buccal swab kit confiscated from Monique Smith [the victim], and Item Number Four is one buccal swab kit confiscated from the accused [Fortune].
>
> Q.   Did you have occasion to compare the buccal swab kit contained within Items Two, Three and Four for DNA analysis, paternity testing?
>
> A.   Yes, I did.
>
> Q.   And as a result of your comparison of Items Two, Three and Four, what were your conclusions, Ms. Schroeder?

---

[16]There are two exceptions to the above general rule.  One exception is with respect to habeas petitions challenging an enhanced sentence "on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment...." Lackawanna, 532 U.S. at 404.  The second exception might lie, albeit in a rare circumstance, where through no fault of his own, there was no channel of review actually available to petitioner through which he might have timely challenged his prior conviction.  Lackawanna, 532 U.S. at 405.  Neither of these exceptions are applicable in the instant situation.

A.   My conclusions were that the genetic profile generated from the reference buccal sample, from Larry Fortune, is at least 30,430 times more likely than an unrelated random individual of the Caucasian, African-American, or Hispanic populations to be that of the biological father of Jarrell Smith.

(State rec., vol. 4 of 4, trial transcript, p. 15).

Later at trial, Detective Dukes was questioned regarding which swab belonged to which person, testifying:

Q.  After the birth of [the victim's] child, did you take a buccal swab from that child?

A.  Yes, I did.

Q.  Did you also take a buccal swab from the victim?

A.  Yes, I did.

Q.  And did you also take a buccal swab from Larry Fortune, the defendant?

A.  Yes, ma'am.  I did.

Q.  I'm going to show you what's been marked as State's Exhibits Two, Three and Four....  Whose kit is State's Two, Detective Dukes?

A.  Mr. Larry Fortune.

Q.  Okay.  Who's Three?

A.  Three is Ms. Monique Smith.

Q.  And State's Four?

A. State's Four is - - it says "the accused," but State's Four should have been a buccal swab kit taken from the baby.

(State rec., vol. 4 of 4, pp. 24-25).

Because Detective Dukes claimed that Exhibit Two was the swab belonging to Fortune and Exhibit Four was the swab belonging to the

baby, while Jennifer Schroeder testified that Exhibit Two was the swab from the baby and Exhibit Four was the defendant's swab, Fortune argues that the swab evidence was not properly handled as there was confusion as to which swab belonged to which person. As such, the buccal swab evidence should not have been admitted at trial. In support of his argument, Fortune also points to the fact that nearly a year elapsed between the time when Detective Dukes took the swab samples (June 11, 2004) and when Ms. Schroeder received the samples for testing (April 12, 2005). (State rec., vol. 4 of 4, trial transcript, pp. 15-16).

A closer look at the trial testimony reflects that the apparent conflict between Ms. Schroeder's testimony and Detective Dukes' testimony was not attributable to any mishandling of the evidence. Instead, as established by the assistant district attorney upon further questioning of Detective Dukes, there was no conflict as to which sample belonged to which person.

> Q. And I'm going to ask you to take a look at State's Two again, Detective Dukes. State's Two is the first one. That one. Now, is Jarrell Smith's name anywhere on State's Two?
>
> A. Yes, it is.
>
> Q. Is Jarrell Smith the baby that was produced from this- -
>
> A. Yes, it is.
>
> Q. - - incident? So is State's Two Jarrell Smith's buccal swab?
>
> A. Yes, it is.

Q.   Thank you.   So that would make State's Four the defendant's buccal swab, correct?

A.   That's correct.

(State rec., vol. 4 of 4, trial transcript, pp. 25-26).

Assuming arguendo that there had been evidence of mishandling of the swab samples, constituting a violation of state evidentiary rules, Fortune still would not be entitled to federal habeas corpus relief.

It is well established that federal habeas review is limited to questions of constitutional dimension.   See generally Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); Castillo v. Johnson, 141 F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).   In reviewing a state trial court's alleged evidentiary error, such as the instant one claimed by Fortune, the federal habeas court's role "'is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness.'"   Andrade v. McCotter, 805 F.2d 1190, 1193 (5th Cir. 1986), quoting Mattheson v. King, 751 F.2d 1432, 1445 (5th Cir.1985).

As noted earlier, based upon Fortune's statement to the effect that he had had sexual intercourse with the victim on numerous occasions and the victim's corroborating testimony that she and Fortune had indeed had sex numerous times, there was sufficient evidence to support a finding that Fortune was guilty of aggravated

incest.[17]  As such, the trial court's alleged error in admitting the DNA evidence did not constitute a denial of fundamental fairness.

### Claim 7): <u>Brady</u> Violation in Connection with Multiple Offender Adjudication

A review of Fortune's multiple bill hearing transcript[18] reflects that Fortune was adjudicated to be a fourth felony offender based upon three prior convictions.  These three prior convictions are encompassed in Case Nos. 410-171, 360-035, and 341-229.  Though difficult to understand, Fortune appears to be arguing that the State, at his September 29, 2006 multiple bill hearing, failed to produce evidence related to his prior conviction in Case No. 341-229 and this failure constituted a <u>Brady</u> violation.[19]  The evidence which "the [S]tate failed to produce" consists of "the docket mater [sic], the guilty plea form, and the certificate of non-availability".  (Rec. doc. 3, p. 38).[20]

---

[17]<u>See</u> discussion <u>supra</u> at pp. 12-13.

[18]A copy of the transcript from the September 29, 2006 multiple bill hearing is contained in the State rec., vol. 4 of 4, pp. 113-131.

[19]Fortune makes no suggestion that any evidence was missing in connection with his prior convictions in Case Nos. 410-171 and 360-035.

[20]Fortune explains that he attained this documentation pursuant to a "writ of mandamus/writ of execution" which he filed with the Louisiana Fourth Circuit requesting that the state appellate court order the Orleans Parish Criminal District Court to provide him with various documents, including the docket master, guilty plea form, and colloquy between himself and the judge associated with an earlier guilty plea.  (Rec. doc. 3, p. 36).  The "certificate of non-availability" was ultimately

Fortune contends that the withheld docket master reflects "that he was not advised of his constitutional rights" and that he did not "knowingly and voluntarily waive[] those ... rights". (Rec. doc. 3, p. 37). Further, the withheld "guilty plea form fail[s] to reflect that he was represented by counsel when the plea was taken" because it is without the required signatures of Fortune, his attorney, and the trial judge. (Rec. doc. 3, p. 38). Finally, in his Traverse (rec. doc. 12, p. 3), Fortune states that "the fact that the State has never been able to produce a record of the colloquy transcript of the guilty plea in case number 341-229 'unequivocally' raises a constitutional question, whether Petitioner's prior guilty plea evidences a valid predicate conviction for purposes of use in Multiple Offender Proceedings."

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87-88 (1963), the United States Supreme Court held that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." That rule has been expanded to include evidence which impeaches the testimony of a witness, where the reliability or credibility of the witness may be determinative of guilt or innocence. <u>Giglio v. United States</u>,

---

provided in lieu of the requested colloquy pursuant to the court reporter's representation that despite her "due and diligent search", she could not locate the requested colloquy. (Rec. doc. 3, p. 37). Fortune has provided this Court with copies of his guilty plea form in Case No. 341-229, along with the "certificate of non-availability" in Case No. 341-229. (<u>See</u> rec. doc. 3-2).

405 U.S. 150, 153-55 (1972).  Evidence is material if there is a "'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682 (1985).  However, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome, does not establish "materiality" in the constitutional sense.  U.S. v. Agurs, 427 U.S. 97, 109-110 (1976).

A review of the multiple bill transcript reflects that Fortune cannot meet his burden of proof for purposes of showing that the evidence at issue constituted Brady material.  First, with regard to the guilty plea colloquy, Fortune cannot prove it was suppressed.  Instead, as evidenced by the "certificate of non-availability", the guilty plea transcript was not produced because the court reporter could not locate the transcript.

Second, Fortune has failed to show that the docket master and guilty plea form were material.  The trial court, after listening to the evidence which was produced by the State, determined that said evidence was sufficient to support a finding that Fortune was a fourth felony offender.  The trial court's factual finding in this regard is entitled to a presumption of correctness.  The allegedly suppressed evidence, i.e., the docket master and guilty

plea form, does not render the trial court's finding in this regard unreasonable.

Further, the Court notes that Fortune would be subject to the same sentence, life imprisonment, even if his prior conviction in case no. 341-229 was invalid for enhancement purposes. As Fortune's October 10, 2006 sentencing transcript reflects, the trial judge sentenced Fortune pursuant to the provisions of LSA-R.S. 15:529.1(c)(ii). Under this statute, as the trial judge explained, if "the fourth felony, and two of the prior convictions, are felonies described as crimes of violence, sex offenses where the victim is under the age of eighteen or is a violation of the uniform control[led] dangerous substances law punishable by imprisonment for ten years or more, [t]hen the person shall be imprisoned for the remainder of his natural life without benefit of probation, parole or suspension of sentence." (State rec., vol. 2 of 4, sentencing transcript, p. 3 ).[21]

Under the pertinent provisions of 15:529.1(b)(ii), if the third felony and the two prior felonies are felonies described as crimes of violence, sex offenses where the victim is under the age of eighteen at the time of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by

---

[21]LSA-R.S. 15:529.1(c)(ii) also provides, with regard to the applicable prior convictions which will result in an enhancement of a defendant's sentence to life imprisonment, that it can be "any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes...."

imprisonment for ten years or more, or any combination of such crimes, "the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence."

Fortune's conviction in the instant matter was for aggravated incest upon his 15-year old stepdaughter, a sex offense where the victim was under the age of 18.  His prior convictions in Case Nos. 360-035 and 410-171 were for "distribution of cocaine" and for "possession of cocaine", respectively, both "violations of the uniform control[led] dangerous substances law which are punishable by imprisonment for ten years or more." (State rec., vol. 2 of 4, sentencing transcript, p. 4).  As such, Fortune, even without the alleged invalid conviction in Case No. 341-229, "a conviction for distribution of cocaine", Id., fit within the parameters of LSA-R.S. 15:529(b)(ii) and, as such, was subject to a mandatory life sentence.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the application for federal habeas corpus relief of Larry Fortune be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en banc</u>).[22]

New Orleans, Louisiana, this <u>3rd</u> day of <u>   August   </u>, 2011.


<u>                              </u>
ALMA L. CHASEZ
United States Magistrate Judge

---

[22]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.